Next case is 413-0049-WC. I'm your Senator Appellant for the Workers' Compensation Comm'n, Matt Power. Mr. Rickey? Yes. You may proceed. May it please the Court. Good morning, Your Honors. Good morning, Council. I am Andrew Rickey. I am representing the plaintiff, Mary Suter. Mary Suter was an employee of Manpower, which is a temporary staffing agency. She was loaned by Manpower to the State of Illinois Department of Insurance. While she was working for the Department of Insurance, she asked her supervisor, Tommy Collier, about getting a parking space. She was instructed by Mr. Collier to see the building manager, Doug Sim, about getting a parking space. So she saw Doug Sim, the same way that all State of Illinois employees got parking spaces, and she asked Doug Sim for a parking space. She did receive a parking space from Doug Sim. One day, on her way to work, she parked in her assigned parking space, and she got out of the car, she retrieved some items from her car, she closed the door, and due to ice on the ground, she slipped and fell, entered her arm. Now, based on prior case law, it seems that this accident is clearly compensable, yet the arbitrator found that no accident occurred. I believe that the arbitrator's decision, which was affirmed by the Commission, is contrary to law, because if you look at the County of Cook case, it's very factually similar to the present case. Let me ask you this, this may be an issue here. Whose employee was this? Under the law, when it's a loaned employee, whose employee was she? Well, it's both Manpower's and the State of Illinois's employers, because under the Workers' Compensation Act, if the borrowing employer, which is the State of Illinois, does not pay all the benefits owed, then the loaning employer, Manpower, would be liable for all benefits. Well, actually, the Act says they're jointly and severally liable anyway. Yes, that's correct. I think it's Section 184. They're jointly and severally liable, and there's no jurisdiction over the State of Illinois in the Circuit Court. You dropped them, is that what you did? Yeah, well, what happened was we filed the appeal to the Circuit Court under both parties. The State of Illinois filed a motion to dismiss the State of Illinois as a party, and after looking at the case law in Ms. Christina Smith's motion, who is the attorney for the Attorney General's office, it became clear that the Circuit Court would not have jurisdiction over the State, because unless the State consents to jurisdiction, or unless there's a specific statute that confers jurisdiction on the State, that the Court cannot have jurisdiction over the State. So Manpower would be the only party who's still a party to this case. All right, second element. Whose parking lot was this? That becomes critical. I mean, whose parking lot was this considered to be? Well, it was an employee parking lot. So this was a parking lot for State of Illinois employees and for other businesses that were in the Washington Street address. So there are multiple parking lots that are apparently subject to this lease, right? Yes, that is correct. The parking lot where your client fell was the entire parking lot subject to the lease, or were only certain spaces within that parking lot subject to this lease? Well, the entire parking lot was subject to the lease. The lease stated that the lease order was to give the State of Illinois Department of Insurance 410 parking spaces. And Doug Sim testified that he gave the State of Illinois Department of Insurance one parking space per every 500 square feet. So there are a number of parking lots, and he basically just gave the State of Illinois Department of Insurance a parking space every 500 square feet. But this lot, where the fall occurred, were there some spaces that were not subject to this lease, that were not provided to State employees? Well, I mean, there were other departments within the building that I would assume would have their own separate leases that would also have parking spaces in that building. What I'm getting at is whether or not the space where your client fell was a space specifically subject to this lease, identified within the lease for State employees, or whether or not that's even an element of proof that you would have to shoulder. I don't believe that is an element of proof. I believe that the lease is clear on its face, that 410 parking spaces for State of Illinois employees. It doesn't specify in the lease that only these parking spaces are subject to lease and only these employees are subject to lease. It just says 410 parking spaces for State of Illinois Department of Insurance employees. And there has been no evidence to suggest that somehow this parking space is different than all the other parking spaces as defined in the lease, or that this employee is different than all the other employees as defined in the lease. A man by the name of Sim assigned her, or directed her to the lot, correct? I'm sorry, can you repeat that? A man by the name of Sim directed her to the lot? No, he specifically assigned the space, not just the lot, a specific space where she parked. What role, did he work for the State? What was his position? No, he worked for, he was the building manager, so he worked for the lease owner. Okay, so is he going to make an argument, hey, Sim's got nothing to do with the State of Illinois or manpower, ergo this shouldn't be covered under the exception to the employee parking lot. So how are you going to respond to that? Well, I would respond to that by saying that it's not relevant, because if you look at the case law, the question is how does this, whether this risk to the plaintiff is greater than the risk to the general public. And regardless of whether it was Tommy Collier who gave her the parking space, or Doug Sim who gave her the parking space, or some other person who gave her the parking space, the fact remains that this parking space where she parked was an assigned parking space where members of the general public were not allowed to park. So there was zero risk that a member of the general public would slip on this ice at this parking space, because members of the general public were not allowed to be at this parking space. They're not allowed to be in this lot. A member of the general public cannot go up to Doug Sim and ask him for a parking lot, for a parking space. You said something just then, and that's where I was going with some of my earlier questions. You say that the general public was not allowed to be in this lot? Yes, that is correct. Okay. Doug Sim, there was no testimony that he assigned people other than State of Illinois employees who worked in this building parking spaces, is that right? Yes, that is correct. You had to be working for the State of Illinois, or Doug Sim would not assign you a parking space. Yes, it is my understanding of Doug Sim's testimony that whenever a State of Illinois employee was hired, that they would come to Doug Sim to request a parking space. I don't believe there was any testimony that he'd ever assigned other people other than State of Illinois employees parking spaces. The fact that Sim didn't work for the State, your contendent should not absolve them of responsibility. You can't use that as an excuse to duck the claim. Exactly, Your Honor. And I know the respondent claims that there's no relationship between Doug Sim and the State of Illinois, but Doug Sim was acting pursuant to the lease. I mean, this was his job as the building manager to assign these parking spaces. If he didn't assign these parking spaces, he would be in breach of the lease. And I don't see how the respondent can claim that there's no relationship between Doug Sim and the State of Illinois when we clearly have this lease. If that were the case, you could just set up a straw man between your business and the parking lot. Exactly. And that you had nothing to do with the parking lot. Exactly. And in the County of Cook case, I would like to point out that it was actually the lease owner who maintained the parking lot. So it was the County of Cook rented the building from the City of Harvey, and the City of Harvey maintained the parking lot. And in that case, the court still found that the plaintiff's accident was compensable. They didn't find that as cause for them not to be responsible. The fact that they leased the building and that someone else maintained the parking lot, it doesn't matter. The employer, the County of Cook, was still responsible in that case. Just like in the present case, the employer is still responsible regardless of whether they leased the building and regardless of whether the parking space was included in that lease. Who's the employer here? Well, the employer is Manpower, who loaned Mary Sugar to the State of Illinois Department of Insurance. So Manpower is the loaning employer, and State of Illinois is the borrowing employer. And so this is a matter where the respondent is the loaning employer. Well, I don't believe that's contended. I believe actually on the circuit court, if you look at, it's actually in the record, the oral argument, I actually brought that issue up in front of the circuit court judge, and the respondent's counsel stated that that's not an issue. They're not disputing the fact that they're a loaning employer. So I don't believe that that issue is in dispute. But, you know, I think it's very clear that Manpower is, in fact, a loaning employer. They're a temporary staffing agency, and they do loan employees to other employers. Is there any issue that the loaning employer is not responsible once the borrowing employer takes over? Well, I mean, if that was true, it might be an issue. But in this case, the State of Illinois didn't pay anything on this case. So the loaning employer, Manpower, would be responsible because the State of Illinois paid nothing on this case. And it's clear from the act that if the borrowing employer doesn't pay anything, that the loaning employer is responsible. Okay. What's your theory of the standard of review? The standard of review is de novo because it is a question of law. I don't believe that there's any factual dispute. I know in their response brief they claim that there's a factual dispute about whether the parking space was given for the terms of the contract. But, I mean, I think there's no dispute over the terms of the contract. I mean, the contract is clear in their face. There's no evidence that the contract was changed or altered in any way. You know, the contract is what it is. No other disputes that Simms' role was to assign these spaces? I don't believe that is a dispute because both Mary Souter and Doug Simm, their testimony both agrees that Doug Simm was the one who assigned all these parking spaces to State of Illinois employees. There's no dispute that whenever an employee of State of Illinois wanted a parking space, that they were instructed to go see Doug Simm. And the only other witnesses that responded to Tommy Collier basically said that. So you believe it's a de novo whether or not the state is legally liable or Van Park is legally liable? Yes, that is correct, Ron. Because I don't believe that there's any factual dispute. The contract is clear in the face. The testimony, both Mary Souter and Doug Simm's testimony both agree with each other. Only other witness, Tommy Collier, basically said he doesn't know anything about the parking situation because he's worked there so long he doesn't even remember how he was assigned a parking space. He said he was assigned a space across the street. He doesn't remember how he got that, but when asked who he would see in the parking space, he just said you would have to ask a person to know about that because I don't really know. So the only witnesses who know anything both say that Doug Simm is the person who assigned parking spaces for the State of Illinois. And, you know, based on the County of Cook case, it seems pretty clear that in the situation where there's a greater risk to plaintiff than members of the general public that it would be compensable. And, you know, the cases that the respondent sites really aren't on point. The Matson's case, that dealt with an employee who her supervisor drove her to work and she was parked in a parking space where she wasn't allowed to park, and which is completely different than our case, which is where she was parking in her assigned parking space. And, you know, the same thing with the Joyner case, that dealt with someone parked in a public parking lot. So there was the exact same risk between members of the general public and the plaintiff in that case. Another case they cited was the Morris Harvey case, and that actually supports our argument because in that case there was a waitress who was working at a restaurant and she was told by her employer that the customers should be able to park in the front lot, so she was basically told not to park in the front lot. She wanted to park in the customer parking lot, she was only allowed to park on the sides and in the back. And in that case she slipped and fell on ice in that case, same as in our case, and the court did find it compensable. And the reason the court found it compensable was because there was a greater risk to her because she was limited in where she could park, as opposed to members of the general public who could park anywhere in the lot. And so I believe that all the case law supports that this accident is compensable. And I would request that this court reverse the commission's decision and remand to the arbitrator for a finding of TTD medical nature and extent in causation. Thank you, Your Honors. Thank you, Counsel. Mr. Brewer, you may respond. Counsel, Your Honors, may it please the court. My name is Matt Brewer. I'm here today on behalf of Respondent Manpower. And if I can, I want to start off today by addressing Justice Hoffman's question in regards to the standard of review. As set forth in my brief, I do not believe that this is a law issue. I believe it's a factual issue. I've set forth specifically a couple of the things that I think are in dispute. Number one, I know some of the justices today have asked questions about it. No one from the State of Illinois or no one from Manpower specifically directed this lady to her spot. I know Counsel brought up Tommy Collier's testimony that, go see Doug Sim and you'll get the parking. That's not quite what he said. If you look at what he said, first of all, he said, I don't know anything about the parking situation. You can either go see Doug Sim, which I think the very important thing after that is, on your own. Or you can go pay for a meter or find your own spot. That's not controlling and directing her. He's simply giving her an option. Listen, temporary employees we've received from Manpower or temp agencies in the past have either, listen, you can go park on the street or you can go see Doug Sim. And even Doug Sim's testimony, I think, is very telling. I addressed the lease a little bit in my brief. And to my knowledge, there's no testimony that Doug Sim specifically assigned her spot pursuant to the lease. Does he have to assign her a specific spot or is Doug Sim's role to assign these temporary employees to go to the parking lot or to authorize them to go to the parking lot? Doug Sim doesn't have to do anything. And he testified to that. He doesn't, but did he? There is no evidence in the record that the spot that I gave to Ms. Suter or Ms. Sutter is one of the 410 spots out of the lease. There is no evidence of that. Well, there's no evidence that there were a specific number of 410 spots. It's just he had to provide that many spots for the Department of Insurance. And there were other State of Illinois offices in the same building and he had to provide a certain number of spots for each of those offices, which comprised all these lots, right? Correct. But these lots, all of these lots were only for parking by State of Illinois employees. That's actually not correct because there was a restaurant within that building. And he testified to that. I can't recall the name of the restaurant. Correct. A member of the general public couldn't go to Doug Sim and get a parking space there, right? That's correct. But Doug Sim never testified that he was giving her this spot pursuant to the lease. He testified that he was giving her the spot because she worked at the building as a State of Illinois employee. Right, but I think the point is how did she get there? She got there on her own. Nobody from the State of Illinois or Manpower directed her there. She had a decision and she made her own decision outside of her own. Is there any dispute that she was assigned this spot because she worked for the State of Illinois in that building? She was assigned the spot because she went on her own to Doug Sim. Let me ask another way. We can parse words all morning. How do you get around the De Hoyos case? Give me one moment, Your Honor. I cite that in my brief actually, Your Honor. And that is for the general proposition that there are exceptions to the rule, if I remember correctly, that cases involving parking lots may be compensable. But you have to meet one of those exceptions, I think is the point. Let me quote this language from you. When an employer provides a parking lot to employees and an employee falls on the parking lot, despite being uncontroverted, I mean you're not controverting yourself, the employee is entitled to recover as a matter of law. So why doesn't that rule apply here? I'm disputing the first portion of that, Your Honor. You don't have to direct. You provided a lot. The State of Illinois has a lot, as Justice Stewart pointed out, for the people that work in the building. But it's not the State of Illinois or Manpower's lot. This is Ralph Hurwitz's lot. This is the building manager's lot. Correct. Not the whole lot. Your position seems to be, really, everybody is on their own. Doug Sim in the State of Illinois has nothing to do with this lot, apparently, according to your argument, right? No, Doug Sim can direct people for spaces if it's available. And it's the State's lot, right? It's Ralph Hurwitz's lot. In this parking lot, because the building is a leased building, are there non-State of Illinois tenants? Yes. For example, I know that what was brought up was the restaurant in general. I can't remember the name of the restaurant that was within the building. There were, in the State Department of Insurance, I think there were other State organizations within the building, and there was at least one private business within the building that was given spots on a lease that is not in the evidence. I don't know the specifics, obviously, of that lease itself. There's no evidence in the record that she was assigned a space that was not a State of Illinois spot, right? You could make that argument, but I don't see where there's... It's not an argument. Nobody testified to that. Doug Sim didn't say, I've got some extra spaces beyond the number that the State leased, and so I put her in one of those. He didn't say that. He said she came to me, she was one of the temporary employees working for the State, and I gave her a spot. But he didn't say he gave her the spot because of the lease. He testified, he said he gave her the spot because he understands that manpower employees don't make a lot of money, and he's like, listen, if I have a spot available, I give it to them. And that was his reasoning, and with all due respect, I have argued and I believe that this is a manifest way of issue, and the Commission is the finder of fact, and they found that this was not an assigned spot pursuant to that lease. Did they find that? I mean, the arbitrator simply said it was an act of human kindness, and then the Affirmative adopted it. Correct. I was interpreting the arbitrator's decision as to say that it wasn't pursuant to the lease. He did this on his own. Now let me see if I understand your position. Maybe I'm not understanding it. This is somebody who works in the building for the State, a loaned employee, correct? Correct. The lot here is a State, it's leased to the State, correct? Certain spots of the lot. So the employee, the woman here, just can't drive into there and occupy a spot. Can we agree on that? It said that the testimony in the record is clear that it was not open to the general public. So she has to go to Mr. Simp, correct? She could park on the street if she wanted. Let's assume she wants to get in the lot. And then he authorizes her to go there, correct? And your position is that it has nothing to do with the State of Illinois? Correct. No one told her from the State of Illinois to go to Doug Simp. The point of the matter is, if the lot wasn't open to the general public, what was she doing?  Was she trespassing? No, she's not trespassing. I don't see the connection between the lease and the parking spot, just because the lease is there. When no one actually testified, that's how I got to that spot. There's only one way she could get there unless she's a trespasser. She has to go through Simp. There's no contradiction in the evidence about how she got there. She went to her boss at work and said, how do I get a spot? He said, you have to go talk to Doug Simp. She goes and talks to Doug Simp and he gives her a spot. There's no dispute about how that happened. Nobody offered contrary testimony to what Call Your Head had to say or what Simp had to say or what she had to say about that. It is what it is. That's what happened. The lease is never brought up in those conversations. So what? What right did she have to be in the lot other than under the lease? If it's not open to the public. As a part of what? Manpower? No, certainly not manpower. Employee of whom? State of Illinois. So she can't get in the lot unless she's an employee of the state of Illinois. And you're telling me there's no connection between her being in the lot and the lease? There's no connection between her being in the lot and her incidence as an employee of the state, in my opinion. She has to go outside on her own to Doug Simp. Is there evidence of non-state employees going to Simp and getting spots in this particular lot that he bestowed these acts of kindness on non-state employees? Is there any evidence of that? Other than the spaces that were alleged to be available to some of the non-state entities within that building, I don't believe so. Because primarily, I think that building does house primarily state organizations and state entities in general. Well, is it the state or is it the Department of Insurance? Does it make a difference whether she's in another agency versus the insurance department? No, but I guess where I'm trying to stand on is the fact that the state of Illinois, you know, Tommy Collier, her boss, and no one from Manpower, they didn't have any control over where she parked. Yeah, they did. They could have said, don't park there. Don't see us. I don't think they can prevent her from asking Doug Simp. But the point is, you've conceded in the real world to get into this lot that is not open to the public. In some ways, again, they have to talk to Simp. That's not in dispute, is it? No. Is Simp an employee or agent of the state? I've made that clear. He has no affiliation with either the state or Manpower. And, you know, additionally... Is the property manager through the lease with the state? Right, but he doesn't work for the state. He doesn't work for Manpower. His only affiliation would be the gentleman, Ralph Hurwitz, the businessman, has a lease or has some sort of But isn't he an agent for the state? No. He would not be an agent for the state, in my opinion, Your Honor, based upon just a lease between Ralph Hurwitz and the state of Illinois and he working for Ralph Hurwitz. If I can, I want to... You're saying, as a black law principle, that employees of a landlord who leases to the state is not an employee or agent of the state, right? I don't believe that Doug Simp in this particular instance of that. Doug Simp is, isn't he an employee of the landlord? I believe he's an employee of the landlord, but I don't see how that makes him an agent of the state at all. Well, that was my question. And if I can, briefly, to address the Cook County case that counsel had pointed out in his brief and has attempted to make some type of a correlation. I went through briefly in my brief some of the very distinguishing factors in that case. In this case, obviously, we have a slip and fall in the county of Cook case that involved a lady who was stabbed while sitting here, probably she was eating lunch. Also in that case, she was specifically assigned her spot by her boss, who was a judge, and I believe she worked in the courthouse. And in this case, Tommy Collier, who was her boss of the state of Illinois, did not assign this spot. The spot in the Cook County case, the lot in general, was found to be maintained and controlled and cleaned up by the city, by her employer. And in this case, it's Doug Simp's responsibility and he testified to that as far as maintaining and controlling the parking lot. I think those are very important distinguishing factors. Other than the issue of maintenance, are the other distinguishing factors even relevant? Excuse me, Your Honor? Why are they even relevant? Other than who maintains the lot. Why are the other, whether she was stabbed or fell down, how is that relevant? I think it's... The accident itself is not relevant, I guess, or the cause of the accident itself is not relevant, but I think how she got there and why she's there and the control of the lot and the premises in general, as far as her getting to that specific spot, I think is very important. And I respectfully disagree with most of the court here today and I don't think the state of Illinois or Manpower had any control over her. They gave her an option and she, on her own, went and Doug Simp testified that he, out of the goodness of his heart... So you would argue that if an employer says, you can either park on our lot or you can park on the street, then if they fall on the employer's lot, there's no liability because they had an option to park on the street. Well, I think that's part of it. That would be one instance because I think if you're looking at control, they're not controlling her. I mean, if this is a... They have to make her park on their lot? No, but if they had... If it's a situation where there's specifically an assigned spot, like, I have lots, one spot for every one of my employees and that all happens on that specific lot, I think that's compensable. But if it's a situation where it's a temporary employee, there's not even necessarily spots to get when you initially work for the state of Illinois like Mr. McCaul, you're testified to, and you say, listen, you can go park on the street or you can go talk to someone else. If she talks to someone else, I don't see how that relates back to the state of Illinois. Let's try to carry out your extension, your logic a little further. Let's assume it's not a temporary employee. It's a full-time employee for the state. So, and there's a state lot. You seem to be saying is, well, you know, if you've got to walk ten blocks, that's up to you, or you can use our lot. If you call on our lot, it's no big deal because you had a choice. You could walk ten blocks or you could cross the street from our lot. That seems to be what you're saying because you keep emphasizing she didn't have to park there. So the case turns on whether or not the employee has to park there, is that what you're saying? I mean, the general case... states that falls coming and going from parking lots are not compensable unless it meets one of the exceptions. Right. That is the employer-controlled lot. Right. And I don't believe that this employer has any control over this lot. It's Doug Sim who has that control. Or, you know, the organization under Ralph Hurwitz. Thank you, Your Honor. Thank you, Counsel. Mr. Brewer, the state was dismissed by the circuit court, right, out of this case? Yes, that is correct. Are you pursuing any action against the state? I mean, we were at the commission level, but since they were dismissed, I mean, unless there's... Is this a court-acquainted action? Oh, I wasn't aware that we had a court-acquainted action. I mean, is this really fair if the borrowed employer is the one that's going to be primarily responsible and that you only bring in the owning employer? If the borrowed employer doesn't pay, the borrowed employer isn't seemingly on the hook anymore here. Well, I'd agree that it seems somewhat unfair, and I wish the legislature would change that rule and allow the state to be able to be brought in circuit court and appellate court, but, you know... Under the Act. Yeah. I mean... I wish they changed the Workers' Compensation Act so you could bring appeals against the state. It does seem kind of unfair that the state can get out a liability, but, you know, I mean, it's clear under the law that I, you know, don't really have much of an argument for bringing the state when the law is clear on its face. If we reverse it, remand it back to the commission for determination of these other issues, then is there any way you could bring the state back in? Um, hopefully. What would you bring back in court? The Act specifically says in Act 1 that decisions of the commission against the state, devolving the state, are not subject to judicial review. Period. Whatever the commission does with the state, it does with the state. That's the end of it. It's the end of the story. And there's nothing in here but a jurisdiction of the Court of Claims to hear an appeal. Well, then I guess in that case we wouldn't have a Court of Claims... I mean, the state gets to provide its own judges, the commission, to determine that it has no liability and you can't go anywhere. You know, Russians have the same system. Yeah, so I guess, unfortunately, then we don't have a claim against the state of Illinois. Well, we can't sue the government. We can't sue the government. That's not a good thing. I might disagree with that, but the legislature... Some of us might, too, but it seems as though the legislature doesn't. It's a good idea. Yeah, and unfortunately that's what the legislature doesn't think that we should be able to sue the state, so we're bound by that. And I would like to point out that I believe... Did you file this against the state? Yes, we did. In the commission. Yes, that's correct. We filed a case based on that, based on the Workers' Compensation Act. And, you know, unfortunately, the law is the law, and as much as I would have liked to argue against it, there's... So if this went back, and you received a decision in your favor, then the state's on the hook, right? Well, I think I'd have to do research on that and determine whether we can bring it back in the commission level. I'd just like to point out that the respondent seemed to have mischaracterized the Cook County case when he said that it was the employer in that case who maintained the lot. It wasn't... The employer was the county of Cook in that case. They leased it from the city of Harvey. It was the city of Harvey that maintained the lot, so it was a leasor who maintained the lot, the same as in this case. So the only distinction between Coon County and this case is the fact that in that case it was her supervisor, the judge, who assigned her this space, as opposed to this case where it was the building manager who assigned her this space. And, you know, I don't think the respondent has brought any... has explained how that distinction makes a difference. Like, how does that change the risk involved? It's still a greater risk to the plaintiff than there is to members of the general public, and I think that's very clear, and I know the respondent says that she saw Doug Sim on her own, but, you know, I mean, a member of the general public can't just go and see Doug Sim. Like, she would have no way of knowing who Doug Sim is if Tommy Collier didn't tell her to see Doug Sim, so I don't... their argument doesn't really make sense on that account. And, you know, I'd just like to point out, I know you brought up, like, she could park somewhere else, and, you know, that's true in all these cases that, you know, in, like, the Morris Harvey case, the plaintiff could have parked somewhere else. She wasn't required to park in the restaurant's parking lot, but she did, and the court found that the fact that she was restricted from parking... she wasn't allowed to park at the front of the building, the court found that there was a greater risk to her than to members of the general public since the general public can park anywhere in the lot. So, you know, it doesn't... we don't have to... I would request that the court reverse the commission's decision and remand to the commission for findings of causation, TTD, medical infirmancy. Thank you. Thank you, counsel, both. This matter has been taken under advisement.